UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LINDA ROBINSON                                                                                    PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:04-CV-82-S

AEGON USA, INC. d/b/a/ AEGON
INSURANCE GROUP, et al                                                                         DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on cross-motions of the parties for judgment in this action brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The action was removed from the Jefferson County, Kentucky, Circuit Court, and there is no dispute that the policy in issue, the Commonwealth General Corporation Long-Term Disability Plan (the "Plan"), is a self-funded plan qualifying under the terms of ERISA.

### BACKGROUND

This action arose from the termination of long-term disability benefits to the plaintiff, Linda Robinson ("Robinson"). Robinson was employed by Commonwealth General Corporation as a staff manager. In March of 1996, Robinson seriously injured her back. She began receiving disability benefits on March 18, 1996, with a diagnosis of: (1) failed back syndrome; (2) fibromyalgia; (3) osteoarthritis; (4) irritable bowel syndrome; and (5) depression.

In order to qualify for disability benefits Robinson had to meet the Plan's definition of being "Totally Disabled." The Plan states:

> An Insured will be considered Totally Disabled for the first 24 months if: (a) he is unable to perform the substantial and material acts necessary to pursue his own job in the usual and customary way; and (b) is under the care of a Physician.

> After the first 24 months, an Insured will be considered Totally Disabled if he is unable to perform any reasonable occupation, which is any gainful activity, for which he could reasonably be expected to perform satisfactorily in light of age, education, training, experience, and physical or mental capacity.

CG0085. The Plan also contains a limitation on benefits if the disability is due to a "Mental Illness."

The Plan contained the following provision applicable to Robinson:

> If Total Disability commenced on or after January 1, 1995, and it is due to Mental Illness, as defined in the Definition section of this Policy, the Maximum Benefit Period will be as follows:
> 1. ...
>
> 2. if the insured has five years of service but fewer than 20 years of service as of the initial date of disability, the benefit period may not exceed 60 months...

CG0092. The Plan further provided that:

> In the event any claim is made that any part of the Plan is ambiguous or questions arise concerning the meaning or intent of any of its terms, the Named Fiduciary shall have the sole authority and discretion to resolve all disputes regarding the interpretation of the Plan, including making any findings of fact necessary for determination of any benefit payable under the Plan. The decision of the Named Fiduciary shall be final, conclusive and binding as to all parties, ...

CG0042.

On February 11, 2002, Robinson was sent a letter notifying her that the defendant had concluded that she no longer met the Plan's definition of disability and that her Long-Term Disability claim had been denied. The letter explained the defendant's analysis:

- On January 7, 2000, the defendant received Robinson's Disability Questionnaire indicating that she felt she remained disabled.

- On November 16, 2000, Robinson attended a two-day Functional Capacity Evaluation ("FCE"). The physical therapist did not complete the exam, however, because of a neck injury that had not been completely diagnosed by Robinson's vascular surgeon.

- The defendant attempted to obtain medical documentation that demonstrated Robinson's abilities, restrictions and limitations, but stated that the records in its possession did not give it "a clear picture" of Robinson's condition.

- The defendant scheduled another FCE. Robinson was not able to attend this FCE due to a migraine.

- Another FCE was scheduled; however, this FCE was not attended by Robinson.

CG1143 - 1144. Based on the incomplete and two missed FCE appointments, the defendant states that it was "unable to obtain a clear picture of how [Robinson's] condition prevents [her] from working any reasonable occupation." CG1145.

On April 18, 2002, Robinson appealed the denial of her disability benefits. CG1005. The letter sent by Robinson's counsel contained a copy of Social Security's recent review of Robinson's condition, explained why Robinson was unable to attend the scheduled FCE, and stated that copies of the rest of Robinson's medical records would be submitted as soon as possible. The letter also explained that Robinson had scheduled her own FCE, but had to cut it short because her blood pressure was to high to complete the test. CG1005 - 1007.

On December 16, 2002, Robinson was sent a letter denying her appeal. CG0324. This denial restates that Robinson's inability to attend the two FCE appointments and submitted medical information did not support Robinson's claim that she was unable to work. *Id*. Again, Robinson appealed this denial. CG0205. The appeal requested that the defendant "re-examine the extensive medical records as well as the new records tendered herewith. Additionally, we are seeking an impairment rating and additional information from her treating physicians to assist you in your assessment of her claim." *Id*.

On September 10, 2003, the defendant sent Robinson a letter advising her that it was requesting additional information from an independent medical examiner (IME) physician, and that when it received this information it would notify Robinson of its final decision. CG0157. The IME that this letter references was Dr. Coates. The initial report submitted by Dr. Coates stated:

> I have reviewed the information and records which you have suppled in regards to Linda Robinson.... She has had both cervical and lumbar symptoms and despite the fact that many of these symptoms are strictly subjective in nature I think the chance for this lady to ever return to gainful employment of any type is extremely guarded. I feel that much of this is based on her depression, her chronic subjective symptoms and it is my opinion that she will not be able to perform any reasonable occupation because of the established chronic nature of her symptoms and the apparent total acceptance of this disability lifestyle in her own mind.

CG0010. The defendant requested that Dr. Coates further clarify his statement and "indicate for us your opinion as to whether Ms. Robinson could return to work absent her psychiatric conditions." CG0156. Dr. Coates responded:

> I appreciate the reasonableness of your questions but from a practical standpoint it is nearly **impossible to answer that with medical certainty** based on the fact that she does have chronic symptoms from her back. It is impossible to express with any medical certainty whether her depression and her psychiatric condition is secondary to a chronic pain syndrome from her low back or whether it was primary, ...
>
> But I can say that **if** there was some way to make that differential then she could do sedentary work with her back if the psychiatric condition would be eliminated....

CG0006 (emphasis added).

On November 25, 2003 the defendant denied Robinson's appeal. The reasoning for this denial again included the fact that Robinson failed to appear or complete the FCE appointments. CG0004. The denial letter also states that "[a]ccording to the [defendant's] independent medical consultant, you are capable of sedentary work but that your depression has eliminated your desire to work." *Id*. Based on Dr. Coates independent review, the defendant found that Robinson's inability to work derived from her depression rather than a physical cause and terminated her benefits under the Mental Illness limitation contained in the plan. *Id*. Robinson subsequently filed this suit.

## DISCUSSION

The Plan states that the "Named Fiduciary shall have the sole authority and discretion to resolve all disputes regarding the interpretation of the Plan" and that its decision shall be "final, conclusive and binding as to all parties." CG0042. Therefore, the defendant "must certainly have been entrusted with the authority to exercise their judgment, or discretion, in interpreting and applying the eligibility provisions." *Johnson v. Eaton Corp.*, 970 F.2d 1569 (6th Cir. 1992)(citation omitted). Because the plan clearly reserves discretionary authority to the defendant, we must review

the denial of benefits under an "arbitrary and capricious" standard. *Perez v. Aetna Life Insurance Co.*, 150 F.3d 550 (6th Cir. 1998); *Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 111 (1989).

"The arbitrary and capricious standard is the least demanding form of judicial review." *Hunter v. Caliber Systems, Inc.*, 220 F.3d 702, 709-10 (6th Cir. 2000). If the defendant's denial of benefits is rational in light of the plan's provisions then we must find for the defendant. *Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376 (6th Cir. 1996). In other words, if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Killian v. Healthsource Provident Adm'rs.*, 152 F.3d 514 (6th Cir. 1998)(citation omitted). Although, the "arbitrary and capricious" standard is highly deferential, we find the decision to terminate Robinson's benefits arbitrary and capricious.

Although the defendant first based its denial of benefits on the fact that it could not get "a clear picture" of Robinson's condition from the records it had and Robinson's failure to attend the FCE, we find this reasoning of no significance. As part of its review, to determine whether Robinson was "Totally Disabled," i.e., whether she could obtain reasonable employment, the defendant used an independent medical reviewer, Dr. Coates, to review Robinson's records. Dr. Coates concluded that Robinson would not be able to return to any reasonable occupation. Therefore, we find Robinson's inability to attend any of the FCE appointments of no significance since the medical evidence available gave the defendant a "clear picture" of Robinson's condition.

The defendant then requested Dr. Coates to clarify his opinion regarding Robinson's ability to return to work absent "psychiatric conditions." Dr. Coates reported that it was practically medically impossible to determine this because of her chronic back pain symptoms. Dr. Coates stated **"if"** there was some way to make the differential then Robinson would be able to perform sedentary work. The defendant's conclusion that Robinson's inability to return to work is due to her "mental illness" is based on this "if" from Dr. Coates' analysis, and is therefore not based upon any medical evidence. Therefore we find the defendant's decision to be arbitrary and capricious.

## **ATTORNEY'S FEES**

ERISA provides that "the court in its discretion may allow a reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). In exercising this discretion the Sixth Circuit has made it clear that there is no presumption that attorney's fees will be awarded to a beneficiary who wins an ERISA action. *Foltice v. Guardsman Prods.*, 98 F.3d 933, 936 (6th Cir. 1996). Instead, district courts have followed the following factors when making its decision:

> "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions." *Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

*Id*. at 937. These factors, "sometimes referred to ... as the 'King factors,'... are not statutory, of course, and ...simply summarize considerations that have sometimes been deemed significant in other cases...." *Id*.

After analyzing the King factors, we find that an award of attorney's fees is not warranted in this action. First, although we hold that the decision to terminate Robinson's benefits is "arbitrary," we do not find that the defendant acted in bad faith. The defendant attempted to ascertain Robinson's condition, inter alia, by scheduling FCE appointments and seeking the opinion of an IME. Therefore, even though we find the defendant's decision to terminate Robinson's benefits arbitrary, we do not find that it "evidences a degree of culpability approaching bad faith." *Id*. Second, because we find that the defendant's claim had arguable merit, the awarding of attorney's fees will not serve as a deterrent in future circumstances, and finally, Robinson has not sought through this action "to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA." Therefore, we will deny the plaintiff's request for attorney's fees and costs.

## **CONCLUSION**

For the reasons set forth above, the motion of Robinson for judgment on the record will be granted. Robinson's request for attorney's fees and costs are denied. The cross-motion of Commonwealth General Corporation for judgment will be denied. A separate order will be entered herein this date in accordance with this opinion.